# No. 13,089.

## Colorado National Company v. Colorado National Bank of Denver.

### (36 P. [2d] 454)

Decided September 24, 1934.

Messrs. MORRISSEY, MAHONEY & SCOFIELD, for plaintiff in error.

Messrs. BARTELS & BLOOD, Mr. ARTHUR H. LAWS, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE ADAMS delivered the opinion of the court.

THE Colorado National Bank of Denver, a United States corporation, brought suit in the district court to enjoin the Colorado National Company, a Colorado corporation, from carrying on business under its present name or any further use of such name. The defendant moved to strike certain portions of the complaint, which motion was denied. The defendant then entered a general demurrer, which was overruled. The defendant elected to stand on its demurrer and a decree was entered permanently enjoining the defendant from using the name "Colorado National Company" or any variation thereof in any way whatsoever.

The parties will be referred to as they were aligned in the trial court.

The complaint, after stating the corporate existence of plaintiff and defendant, alleges that prior to the incorporation of the defendant, John E. Bergren, Mary J. Bergren, and Charles F. Brannon filed with the secretary of state of Colorado an instrument reserving the

name "Colorado National Company" for a corporation to be thereafter organized by them; that plaintiff notified John E. Bergren, and the secretary of state of Colorado, and also the attorney general of Colorado protesting the adoption and use of the name "Colorado National Company" as being so nearly identical with the name of the plaintiff as to mislead the public. None the less, articles of incorporation were filed with the secretary of state and a certificate of authority and license issued to the defendant. Paragraph 7, concerning which most of the controversy arises, reads as follows:

"That the plaintiff has for many years prior to the matters in this complaint alleged, continuously and uninterruptedly conducted and carried on its business at Denver in the State of Colorado and by reason thereof its name, and particularly the words 'Colorado National' therein, has developed and acquired a 'good will' asset of great value to the plaintiff throughout Denver, Colorado, and the Rocky Mountain Region of the United States; that it is and for some years has been the custom and practice of banks in Denver and throughout the United States to incorporate and conduct affiliated or associate corporations under the same name as that of the bank except that the word 'Bank' is eliminated therefrom and the word 'Company' employed in its place; that said custom and practice is well and widely known to and among the public dealing or liable to deal with the plaintiff; that the name 'Colorado National Company' is so nearly identical with and similar to the name of the plaintiff, and is so suggestive of the practice and custom aforesaid, that the defendant's use and employment thereof is and constitutes an infringement upon the 'good will' of the plaintiff and the 'good will' attached to its name, and the public is liable to be and will be misled and deceived thereby."

The Colorado National Company claims that the trial court erred in denying the motion to strike the matter in paragraph 7 pertaining to the custom, because it is ille-

gal for United States banks to incorporate or conduct affiliated companies, and thus such custom would be illegal and contrary to public policy. As to the overruling of the defendant's demurrer, it claims error on the grounds that there was no allegation of damage or probable damage to the plaintiff; no allegation that the defendant's business was competitive with that of the plaintiff; nor any allegation of fraud in taking the name "Colorado National Company" or intent by defendant to appropriate plaintiff's business.

█ The plaintiff admits the illegality of the custom, but claims that it is admitted by the demurrer as existing and known to the public dealing with the plaintiff, and therefore has its proper place in the complaint. The plaintiff's contention is the more tenable, for this is not a case of two competing concerns trying to sell goods to the public, and the later concern's choice of name being such as to cause confusion in the mind of the public as to which company made the goods. Rather the plaintiff is claiming that by defendant's choice of name, in conjunction with the custom admitted, the defendant appears to be a corporation affiliated with the plaintiff to do business of a sort that the plaintiff bank could not do. From this view of the case the allegation of the custom is essential to the complaint. Whether the custom be a legal or an illegal one, if the result be unfair competition, defendant should not be permitted to make use of the name Colorado National Company.

██ The only allegation of damage is in paragraph 7, "that the defendant's use and employment thereof [the name Colorado National Company] is and constitutes an infringement upon the 'good will' of the plaintiff and the 'good will' attached to its name, and the public is liable to be and will be misled and deceived thereby." Pleading must be of facts and not conclusions of law. *Downing v. Agricultural Ditch Co.*, 20 Colo. 546, 39 Pac. 336; *Crisman v. Heiderer*, 5 Colo. 589. However, in this case plaintiff is trying to prevent future in-

jury before any damage has occurred. So it is not possible to allege specific items of damage with the same particularity as if there had already been injury to the plaintiff. "It is not sufficient merely to allege injury without stating the facts, showing how injury will result, but an exception has been held to exist where at the time of filing the bill complainant would be unable to show any damages, or at least any material damages." 32 C. J. 328. Certainly it is to the advantage of the defendant that, if any injunction be issued at all, it be issued before the defendant has itself become established under the name. It would be much easier to change the name before extensive business is undertaken than afterwards. Therefore, it appears that under the circumstances this pleading of damages was sufficient.

The defendant's claim that injunction should be denied because the businesses of the two concerns are not competitive, is more serious and has never been directly passed upon in this state. In the past courts in other jurisdictions have frequently refused to enjoin use of similar corporate names because there was no market competition. *Corning Glass Works v. Corning Cut Glass Company*, 197 N. Y. 173, 90 N. E. 449; *Borden Ice Cream Co. v. Borden Condensed Milk Co.*, 201 Fed. 510, 121 C. C. A. 200, reversing 194 Fed. 554. The tendency of the courts has been to widen the scope of protection in unfair competition, and hold that it is not confined to actual market competition. 63 C. J. 390. This more recent turn of the decisions is exemplified by the case of *Standard Oil Company of New Mexico, Inc. v. Standard Oil Company of California*, 56 F. (2d) 973, where it is said:

"There was a time in the history of the law of unfair competition when it was a debatable question whether a merchant's good-will indicated by his trade name or trade-mark extended beyond such goods as he sold [Yale Elec. Corp. v. Robertson (C. C. A. 2) 26 F. (2d) 972-973], but it is now well settled that the law of unfair competition is not confined to cases of actual market competi-

tion. If one fraudulently sells his goods or his services or his securities as those of another, injury may result to the latter although he is not engaged in the manufacture or sale of like goods. Where one passes off his goods, his services, or his business as the goods, services, or business of another, equity will intervene to protect the good-will and business reputation of the latter from any injury liable to be caused thereby. See cases note 1.

"Indeed, the right to protection against the unlawful or unfair use of a corporate name extends to all corporations of whatever nature, including corporations not organized for pecuniary profit."

■ ■ *Driverless Car Company v. Glessner-Thornberry Driverless Car Company,* 83 Colo. 262, 264 Pac. 653, deals with the subject of corporate names. There the court refused to enjoin the use by the defendant of the descriptive word "driverless" in its corporate name. In that case it appeared that no practical confusion resulted, and that in advertising, letterheads, and on signs at the respective places of business the names were so printed that confusion was not the natural result. The court says: "The test to be applied in such cases, and the controlling one, is whether or not the later selection of such a name is likely to deceive the ordinary customer, or lead him to believe that in dealing with the later, he is actually transacting business with the former, trader." In the case at bar the effect of the defendant's choice of name is such "that the public is liable to be and will be misled and deceived thereby," as was admitted by the demurrer. It is not possible to draw an exact parallel between the case of a bank and ordinary mercantile concerns. In fact, it has been said that a greater degree of similarity will be allowed between the names of banks because of the discriminating character of the "consumers." *N. Y. Trust Company v. N. Y. County Trust Company,* 125 Misc. Rep. 735, 211 N .Y. S. 785. However, the case at bar is not one where two

banks have similar names, but one where the defendant, not a bank, is using a name of such character that it will lead customers of the plaintiff to believe that they are dealing with a corporation affiliated with the plaintiff. Certainly in such a situation the danger of injury is quite as great if not greater through damaging of reputation and "good-will" of the plaintiff than it would be if defendant were another bank. Equity should protect against unfair practices and the fact that the case at bar presents a slightly different aspect of an old problem is no reason for denying relief.

As to fraud, the Driverless Car case, supra, states: "Fraudulent intent need not be shown in either kind of case where the necessary or probable effect or tendency of a defendant's conduct is to deceive the public and pass off his goods or business as and for that of the plaintiff, especially where the preventive relief sought is against continuance of such conduct."

Judgment affirmed.

MR. JUSTICE CAMPBELL and MR. JUSTICE HILLIARD concur.