Zimmerman, J.
Sometimes, cases of this kind are close on their facts and necessitate the weighing of equities between the opposing parties. In seeking a reversal of the judgment of the Court of Appeals, the defendant, appellant herein, argues, with citation of authorities, that the words, “National City,” are merely generic and possess no unique or special significance in the mind of the public; that there is no competition business-wise between defendant and plaintiff, appellee herein; that any confusion on that score is nonexistent; that the plaintiff has shown no real harm resulting to it in the use of the words, “National City,” by the defendant; and that an injunction, being an extraordinary remedy and issuable only when the proof is clear and convincing, is not warranted in the circumstances of the instant case.
On the other hand, the plaintiff contends that its longtime use of the words, “National City,” during a period of nearly a century has made those words in the city of Cleveland and surrounding territory synonymous with the banking business; that plaintiff has expended large sums of money in establishing its name; that the words, “National City,” have been used only in connection with the banking business and with properties owned by the plaintiff or with enterprises occupying such properties; and that the continuing use of the distinctive words, “National City,” by defendant creates confusion in the mind *513 of the public, tends to connect defendant with the plaintiff, detracts from the plaintiff’s prestige, and gives the defendant a standing and advantage at the plaintiff’s expense to which defendant is not entitled.
In a number of earlier cases the position was taken that, in order to entitle one to an injunction restraining another from using a name or title previously adopted or appropriated, a showing had to be made that the name was being used by the infringer in a competing business. However, in later cases it was reasoned that the use by another, even in a noncompeting business, of the name or title results in a dilution and lessening in value of that name to the original appropriator.
Or, as it was held in Churchill Downs Distilling Co. v. Churchill Downs, Inc., 262 Ky., 567, 90 S. W. (2d), 1041, the trend of the later judicial decisions has been to broaden the scope of protection to established and reputable business enterprises to prevent the appropriation and exploitation of their distinctive names by others, even though such others are engaged in dissimilar activities.
Although the case of Colorado National Co. v. Colorado National Bank of Denver, 95 Colo., 386, 36 P. (2d), 454, was decided on a demurrer to a petition, it stands for the principles that, where a business has adopted and operated for a long time under a distinctive name and has built up an enviable reputation and goodwill thereunder and another new noncompetitive business appropriates and adopts a part of that name, the obvious reaction of the public is to place the two names and businesses in association, and, because of the detriment and loss of prestige which could result to the older business by the appropriation of the most distinctive part of its name, such appropriation will be stopped by injunction.
It stands to reason that a business of high standing and with a distinctive name has a real and vital concern in protecting that name and in preventing its exploitation by another to 'promote the latter’s interests. That the two businesses may be noncompetitive is not controlling. Coattail riding of this sort has met with disapproval and has often been enjoined by the courts.
It has been remarked that the use of the same or very simi *514 lar names in entirely unrelated businesses may in and of itself prove injurious to the originator of the name. Such practice operates to whittle away and disperse in the mind of the public the identity of the name in relation to the one who invented it. The more distinctive the name the deeper its impression on the public consciousness and the greater the need to protect it against indiscriminate invasion. 40 Harvard Law Review, 813, at page 825.
In Stork Restaurant, Inc., v. Sahati (C. C. A., 9), 166 P. (2d), 348, at page 357, it is said:
“The decisions frequently refer to this sort of imitation [the imitation of names] as ‘reaping where one has not sown’ or as ‘riding the coattails’ of a senior appropriator of a trade name.
“By whatever name it is called, equity frowns on such business methods, and in proper cases will grant an injunction to the rightful user of the trade name.” See, also, Safeway Stores, Inc., v. Safeway Properties, Inc. (C. C. A., 2), 307 P. (2d), 495, at page 498.
It is now generally recognized that, where there is such a similarity of names that confusion in identity might result, lack of competition between the users of the name may not be interposed as an effective defense by the junior appropriator, especially where such use would tend to lead the public to believe that the two businesses were in association. Por additional discussion on the subject see Hugo Stein Cloak Co. v. S. B. Stein & Son, Inc., 58 Ohio App., 377, 16 N. E. (2d), 609, and Henry Furnace Co. v. Kappelman, 91 Ohio App., 451, 108 N. E. (2d), 839.
Prom an examination of numerous authorities, we think that the conclusion of the Court of Appeals herein may have been justified on competent evidence, and that the granting of the injunction against the defendant was, therefore, not erroneous.
It is claimed by the defendant that the Court of Appeals committed prejudicial error by admitting into evidence over objection a number of affidavits, all of them to the effect that •deponents, Cleveland business men, identified The National City Window Cleaning Company as having some connection with *515 The National City Bank. If such affidavits were admissable, it would be by virtue of Sections 2727.03, 2727.04 and 2727.14, Revised Code.
The first of those sections recites:
“At the beginning of an action, or any time before judgment, an injunction may be granted * * # [by designated courts and judges] in causes pending therein, when it appears to the court or judge by affidavit of the plaintiff, or his agent, that the plaintiff is entitled to an injunction. ’ ’
The second of those sections provides:
“On the hearing of an application for an injunction each party may read affidavits, which shall be filed with the court.” The third of such sections reads:
“When an injunction has been granted before trial, a party may apply to the court in which the action is pending, or a judge thereof, to vacate or modify such injunction. * * * The application [after notice to the adverse party] may be made upon the petition and affidavits on which the injunction was granted, or upon affidavits on the part of the party enjoined * * *.
“When, on the part of the defendant,' the application is made upon affidavits, but not otherwise,'the plaintiff may oppose it by affidavits or other evidence, in addition to the evidence on which the injunction was granted. ’ ’
Section 2319.03, Revised Code, is as follows:
“An affidavit may be used to verify a pleading, to prove the service of the summons, notice, or other process in an action; or to obtain a provisional remedy, an examination of a witness, a stay of proceedings, or upon a motion, and in any other case permitted by law.” (Emphasis supplied.)
When all these statutes are read together, it would seem apparent that they sanction the use of affidavits on an application for a temporary injunction before the trial of an action on its merits. They may not be received in evidence in a trial where a permanent injunction is asked.
The general rule is stated in 3 American Jurisprudence (2d), 403 and 404, Sections 28 and 29, and is to the effect that by statutory provisions affidavits may be used to obtain a provisional remedy such as a temporary injunction, but they may not be admitted as evidence at a trial- on the merits where *516 a permanent injunction is sought. There the adverse party has a right to he confronted by the witnesses against him and, as to affidavits, may invoke the rule which excludes hearsay evidence. Consequently, affidavits are not generally admissible over objection at the trial to establish facts material to the issue being tried. See, also, 2 Ohio Jurisprudence (2d), 23, Section 17, and 2 Corpus Juris Secundum, 984 et seq., Affidavits, Section 28.
What importance the Court of Appeals may have attached to the affidavits is problematical. At any rate, it was error for that court to receive and entertain them over objection. The case is, therefore, remanded to the Court of Appeals with instructions to reject and disregard the affidavits and to reconsider and redetermine the controversy without reference thereto.

Judgment accordingly.

Taft, C. J., Matthias, 0 ’Neill, Duffy, Herbert and Gibson, JJ., concur.
Duffy, J., of the Tenth Appellate District, sitting by designation in the place and stead of Griffith, J.