## WESTERN AUTO SUPPLY CO. v. KNOX.

### SAME v. KENYON et al.

### Nos. 1573, 1574.

Circuit Court of Appeals, Tenth Circuit.

Dec. 31, 1937.

Bower .Broaddus, of Muskogee, Okl. (McAllister, Humphrey, Pew & Broaddus, of Kansas City, Mo., Simons, McKnight, Simons, Mitchell & McKnight, of Enid, Okl., and Broaddus & Fite, of Muskogee, Okl., on the brief), for appellants.

H. G. McKeever, of Enid, Okl. (McKeever, Stewart & McKeever, of Enid, Okl., on the brief), for appellee Charles E. Knox.

E. L. Richardson, of Lawton, Okl. (Richardson & Cline, of Lawton, Okl., on the brief), for appellees Jack and Glen Kenyon.

Before BRATTON and WILLIAMS, Circuit Judges, and SYMES, District Judge.

BRATTON, Circuit Judge.

Western Auto Supply Company, a corporation organized under the laws of the

state of Missouri, is plaintiff in these two cases of unfair trade practices. The defendants are different, but the cases are so similar that disposition may be made of them in one opinion.

It is alleged in the bill in the first case that in 1909 George Pepperdine organized Western Auto Supply Company as an unincorporated company at Kansas City, and, using that trade-name, conducted the business of furnishing supplies and accessories for all makes of automobiles; that in 1914 Pepperdine and others caused plaintiff to be incorporated; that plaintiff thereupon took over the name and good will of the unincorporated company and ever since has engaged in the business of furnishing tires, supplies, and accessories for all makes of automobiles; that it operates 173 stores located in 28 different states; that three of such stores are in Oklahoma, the first having been opened in Tulsa in 1925, the second in Oklahoma City in 1934, and the third in Tulsa during the same year; that, in addition to its corporate name, it uses the trade-name Western Auto Stores at all of such stores; that at the time such corporate name and trade-name were adopted there was no identical or similar name in use by any other company or individual engaged in that kind of business; that plaintiff has expended more than seven million dollars in nation-wide advertising in catalogues and newspapers, and has become well known under such corporate name and trade-name; that it is one of the largest exclusive distributors of automobile accessories and supplies in the United States; that it has developed a large line of special brands of merchandise, such as tires, tubes, batteries, oils, radios, and other items, all of which bear its copyrighted and registered trade-mark and the company's name; that from 1912 to 1914 the unincorporated company mailed catalogues of its wares to prospective purchasers throughout the state of Oklahoma, and from 1914 to 1935 plaintiff continued the practice which resulted in a successful mail order business in that state with large profits; that, by reason of their long, continued, and wide use, the corporate name and trade-name of plaintiff signify and indicate to the public throughout the United States and in the State of Oklahoma that the goods offered and sold are those manufactured and sold by plaintiff, and have that excellence of quality which conforms to the reputation of plaintiff for furnishing merchandise of superior grade; that under

its rule of business purchases made at one store will be made good or the money refunded at any other store, which is widely understood by tourists; that in the year 1933 defendant Charles E. Knox established a store in Enid, Okl., under the name Western Auto Salvage Company, and is conducting the business of furnishing automobile accessories, tires, radios, and other supplies within that city and adjacent territory; that he subsequently opened other like stores in Perry, Kingfisher, Woodward, Ponca City, and Blackwell, all in that state; that, in addition, he uses trucks from which such merchandise is sold under such trade-name; that he handles, sells, and vends a grade of merchandise which is inferior to that furnished by plaintiff, including secondhand wares; that the trade-name of defendant is deceptively similar to the corporate name and trade-name of plaintiff; that by reason of such similarity great confusion is caused to the public and to the customers and patrons of plaintiff concerning the identity and quality of merchandise furnished by plaintiff; that, in consequence of such confusion, numerous persons have repeatedly called upon plaintiff to replace merchandise furnished by defendant, believing that it had been sold at stores of plaintiff, and that the purchasers were entitled to receive replacement under the general policy of plaintiff that its customers be satisfied or the money refunded; that the trade-name and good will of plaintiff in the state of Oklahoma is valuable; and that the acts of defendant have damaged plaintiff.

The bill in the second case contains substantially identical allegations with two exceptions. It is charged that in 1935 defendants Jack Kenyon and Glen Kenyon established a store at Anadarko, Okl., under the name Western Auto Parts Company and are conducting the business of furnishing automobile accessories, tires, radios, and other supplies within the city and throughout the adjacent trade territory; that thereafter they opened like stores in Lindsey, Frederick, Hollis, Lawton, and Healdton, all in that state; and that, in addition, they are using trucks from which such merchandise is furnished. It is not charged that they sell secondhand or any other inferior grade of merchandise.

Separate motions to dismiss in the nature of demurrers were lodged against the bills. The court sustained the motions; plaintiff declined to plead further; and decrees of dismissal were entered.

■ It is well settled in the law of unfair competition that a corporate name or trade-name used in connection with the business to which it relates may become an asset of great value; that, when it does, it partakes of the nature of a property right; and that equity will enjoin a newcomer in the field from the appropriation and use of a trade-name which bears sufficient resemblance to that of the pioneer as to be likely to produce uncertainty and confusion of identity with resulting injury to the business of the senior. American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317; Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973; United States Ozone Co. v. United States Ozone Co., 7 Cir., 62 F.2d 881; Iowa Auto Market v. Auto Market & Exchange, 197 Iowa 420, 197 N.W. 321; Daughters of Isabella No. 1 v. National Order of Daughters of Isabella, 83 Conn. 679, 78 A. 333, Ann.Cas.1912A, 822.

■■ Confined to their primary meaning, geographical words and words which are merely descriptive of the merchandise are not capable of exclusive appropriation. But, where words of that character have been used so long and so exclusively by a trader or distributor with reference to his merchandise that they are generally understood to mean and denote such merchandise, they acquire a secondary meaning quite apart from their primary significance and he may restrain their perfidious use by another if it causes deceit and injures his business. Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365; Hygrade Food Products Corp. v. H. D. Lee Mercantile Co., 10 Cir., 46 F.2d 771; R. H. Macy & Co. v. Colorado Clothing Mfg. Co., 10 Cir., 68 F.2d 690; Computing Scale Co. v. Standard Computing Scale Co., 6 Cir., 118 F. 965; British-American Tobacco Co. v. British-American Cigar Stores Co., 2 Cir., 211 F. 933, Ann.Cas. 1915B, 363; Standard Paint Co. v. Rubberoid Roofing Co., 7 Cir., 224 F. 695; Trappey v. McIlhenny Co., 5 Cir., 281 F. 23; Phillips v. Governor & Co., 9 Cir., 79 F.2d 971; National Biscuit Co. v. Kellogg Co., 3 Cir., 91 F.2d 150; Iowa Auto Market v. Auto Market & Exchange, supra.

■■ The motions to dismiss admitted all matters well pleaded in the bills. It is pleaded that plaintiff has used its corporate name and trade-name since 1914; that for five years prior to that time the unincorporated predecessor engaged in business under the trade-name which became the corporate name; that, at the time such names were adopted and placed in use, no other company or individual engaged in that kind of business was using the identical or a similar name; that plaintiff has expended more than seven million dollars in nation-wide advertising; that it is engaged in business in 28 different states and operates 173 stores; that throughout that period the corporate name and trade-name have acquired a secondary meaning to the public as signifying the high grade merchandise vended by plaintiff; that the respective names adopted by defendants are deceptively similar to that of plaintiff; and that such similarity has caused confusion and uncertainty in identity on the part of the public, from which plaintiff suffers and will continue to suffer. The trade-name Western Auto Salvage Company in one instance and Western Auto Parts Company in the other bear resemblance to the corporate trade-name of plaintiff. In each instance three of the words out of four are identical. They are "Western," "Auto," and "Company." As to the fourth, instead of the word "Supply" in the name of plaintiff, "Salvage" is used in one instance and "Parts" in the other; and, standing alone, the word "Salvage" has a different meaning from the word "Supply." But that difference must be considered in connection with the identity in the other three words. The resemblance is sufficient that confusion and uncertainty are reasonably conceivable. It cannot be said as a matter of law that the dissimilarity is broad enough as to be inconceivable that a person in the exercise of ordinary care and discrimination in purchasing merchandise vended by defendants would be deceived into the belief that it was merchandise of plaintiff. In other words, it cannot be said as a matter of law that the allegation of deceptive similarity causing confusion and uncertainty is without basis of fact.

■ Argument is advanced that the decrees should be upheld because the parties are not direct competitors. Neither defendant operates a store in Tulsa or Oklahoma City, and the defendant in the first case deals in part in secondhand merchandise while plaintiff vends only new merchandise. But both defendants conduct their business in closely connected towns in Oklahoma; they draw trade from territory not remote from the stores of plaintiff and from terri-

tory included in the mail order system of plaintiff; and the secondhand merchandise consists of accessories and parts for all makes of automobiles. The right to restrain a junior in the field is not confined to cases of actual market competition between identical products. It extends to a case in which one trader represents his products as those of another. A merchant has a sufficient economic interest in his trade-name to restrain another from exploiting it in the sale of his merchandise, even though the two are not engaged in the manufacture or distribution of the identical or like products. Standard Oil Co. of New Mexico v. Standard Oil Co. of California, supra; Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972; Wisconsin Electric Co. v. Dumore Co., 6 Cir., 35 F.2d 555; Horlick's Malted Milk Corp. v. Horluck's, Inc., 9 Cir., 59 F.2d 13; Phillips v. Governor & Co., supra; Colorado Nat. Co. v. Colorado Nat. Bank, 95 Colo. 386, 36 P.2d 454; Churchill Downs Distilling Co. v. Churchill Downs, Inc., 262 Ky. 567, 90 S.W.2d 1041. The facts alleged in the bills and admitted by the motions bring the cases well within the rule enunciated in these authorities.

The decrees are severally reversed and the causes remanded, with direction to deny the motions to dismiss the bills.